179 So.2d 320

**Robert Julian EVANS**

**v.**

**Olivia Rosser EVANS.**

**6 Div. 222.**

Supreme Court of Alabama.

Oct. 21, 1965.

Corretti, Newsom & Rogers, Birmingham, for appellant.

Ling & Bains, Bessemer, for appellee.

COLEMAN, Justice.

The husband appeals from a decree granting to his wife a divorce from the bonds of matrimony and other relief.

The wife had a son, Ricky, sometimes spelled Rickey, by a prior marriage. The testimony indicates that the instant husband adopted Ricky. The parties have two younger children born of the instant marriage.

The court awarded custody of all three children to the wife but gave the husband the right to have the two younger children visit him two weekends each month. As to the oldest child, the decree recites:

". . . All matters pertaining to the visitation privileges of the Respondent with James Rickey Evans are reserved pending conduct of Respondent."

The court ordered the husband to pay $25.00 per week, and,

". . . in addition to this sum the Complainant may have charged to the Respondent the necessary medical, hospital and dental expenses of the two children, Aaron Reese and Julia Renay, and the Respondent is ordered and directed to pay said medical, hospital and dental expenses, which said sums are for the support and maintenance of the said two children."

The decree further recites:

"SEVENTH: That the Respondent· is hereby enjoined and restrained from going to or upon the premises where, the Complainant is living with her father and mother, L. R. Rosser and Margaret Rosser, at Pleasant Grove, Alabama, and from making any threats to the Complainant or to the Complainant's father, L. R. Rosser."

The husband complains that the decree is not justified by the evidence because the evidence is insufficient to prove cruelty.

The parties first separated in July, 1964. The wife testified that in May of 1964, the husband, at "1:30 in the morning," started hitting her with "his fist," that he slapped her once, that she went and laid down on the bed, and then he started hitting her again. She testified that in July, 1964, the husband kicked her with his "steel toed work boots on," and pushed her up against the ice box; that "He said he would take his belt and whip me."

The parties separated in July, but went back together before October 4, 1964.

The wife testified that the week before October 4:

"A The other time, I had been resting and I got up and went back in the living room. There was a little boy from down the street that was eating something in the living room with Ricky and when I come in the living room, Crickett started hollering, 'Why are you letting them eat on the couch?' and I told him I didn't see them until they had started eating, and so I just let them sit there and then he started screaming at Ricky and he jerked him by the arm and he said, 'You didn't have any business bringing that little brat in here anyway,' and the little boy was still sitting on the couch. And I said, 'He knows he can bring anybody in here he wants to.'

"Q Did he strike him?

"A No, but he grabbed me by the arm and asked me if I was going to give Ricky a whipping, and he kept holding the belt like he was going to use it, and he jerked me around in the living room and then he jerked Ricky around and Ricky fell down."

She testified that on October 4, the husband said he would kill her father and that the husband called his father to bring a gun; that the husband threatened to kill Ricky if Ricky went to the house of the wife's father.

Apparently, the parties separated October 4, 1964, and have not reunited.

The wife testified that the husband made Ricky "pull his pants off" when he was four and a half years old, and that the husband then whipped Ricky with a "Teamster's Belt," which was 36 inches long, "two or three inches wide, and a half inch thick"; that, after the whipping, Ricky had "bruised places all over his legs and his back, here, where the buckle had cut him on the leg, it was in two or three places." She said the husband had beat Ricky "Five or six times this year," using the "same belt"; that the husband accused Ricky of masturbation;

"A Ricky was taking a bath and he went in, said, 'You had better not do that,' and I didn't think Ricky was doing anything, and told him so, and he fussed at Ricky and punched him and Ricky didn't know what he was talking about. And Ricky started wetting in his pants and on the bed after that."

The husband himself testified:

"Q Have you ever beat him with a belt so that he was blue?

"A No. I guess I have whipped that baby four or five times in his whole life.

"Q To correct him for some misconduct?

"A Yes, sir.

"Q Have you whipped him with a belt?

"A Yes, with my belt.

"Q Did you hit him hard enough to leave bruises on his body?

"A No, sir."

The husband argues that by returning to live with the husband, after the July separation, the wife condoned the prior cruelty

and that the evidence of subsequent cruelty is insufficient.

We do not agree. We think that the husband's conduct in October, in the light of his prior behavior, justified a finding that, from his conduct in October, there was actual violence on the wife's person, attended with danger to her life or health, or reasonable apprehension of such violence as proscribed by the statute, § 22, Title 34, Code 1940.

". . . . from a consideration of all the evidence, taken ore tenus, we cannot say that the trial court's finding in this respect was plainly and palpably wrong. Burleson v. Burleson, 269 Ala. 637, 640, 114 So.2d 887; Hodges v. Beardsley, 269 Ala. 280, 284, 112 So. 2d 482; George v. George, 255 Ala. 190, 193, 50 So.2d 744. The decree is entitled to the same weight as if it were a jury's verdict. Dorsey v. Dorsey, 259 Ala. 220, 225, 66 So.2d 135." Butler v. Butler, 274 Ala. 352, 353, 148 So.2d 638, 639.

The husband asserts that the court erred in denying him the right to reasonable visitation with Ricky. The husband says that the court must have found that he was fit and proper to have visitation rights with two of the children, "and it is inconceivable that if he was fit and proper to have visitation rights with two of the children that he would not be fit and proper to have the right of reasonable visitation with the third child."

We have outlined the wife's testimony as to the manner in which appellant had treated Ricky. The testimony was ore tenus. If the trial court believed the wife's testimony, we are not persuaded that the court was palpably wrong in reserving all matters pertaining to visitation of the husband with Ricky or in not awarding the husband visitation at that time.

The husband says the court erred in enjoining the husband from making threats to the wife's father, because the wife's father was not a party to the suit, no relief was prayed for in favor of the wife's father, and the court did not have jurisdiction of the wife's father.

The husband cites Farrell v. Farrell, 243 Ala. 389, 10 So.2d 153, where this court affirmed a decree denying relief on a bill to set aside a divorce decree, and Ex parte Kelly, 221 Ala. 339, 128 So. 443, where this court denied certiorari to review a decree in equity. Neither of these cases persuades us that the instant trial court erred in enjoining the husband from threatening the wife's father.

We will not undertake to decide whether making permanent an injunction against making threats to a person, who is not a party, is correct in all suits for divorce under all circumstances. We limit our decision to the points asserted by appellant. As to injunctions pendente lite in divorce cases, see 164 A.L.R. 321.

In Hardin v. Hardin, 277 Ala. 318, 169 So.2d 762, this court appears to have affirmed a divorce decree wherein the court restrained respondent "from the home of complainant and from interfering with her custody of the children." 277 Ala. 323, 169 So.2d 766. The decree also enjoined respondent from "molesting or interfering with Plaintiff, her parents, or the children . . . . at any and all places . . . ." 277 Ala. 320, 169 So.2d 763. It does not appear that respondent objected to that feature of the decree.

We are not advised of any statute authorizing a court permanently to enjoin the husband from threatening the wife's parents. A court of equity is the only one which has general jurisdiction in respect to injunctions. Campbell v. State, 242 Ala. 215, 219, 5 So.2d 466. So far as we are advised, the authority to grant the instant injunction must be found in the general powers of the circuit court, in equity, and the statutory powers of that court to grant divorce, § 20, Title 34; alimony, § 31, Title 34; and custody of children, § 35, Title 34. It seems to us that the legislature intended

that the equity court should exercise such of its general powers as may be necessary to make effective the powers expressly granted with respect to divorce.

The bill contained a prayer for general relief. We think that prayer sufficient to justify the injunction granted.

It is true that the wife's father is not a party to this suit, but the husband is a party. The court had jurisdiction of the person of the husband and of the marital status of the parties. We think this jurisdiction of the husband was sufficient to give the court authority to protect and make effective the decree of divorce by restraining the husband from making threats to the father of the wife when she was living with her father and mother.

We do not think enjoining threats against the wife's father is the same as ordering payment of money to one not a party to the suit.

We hold that appellant has not shown that the court erred in enjoining the husband from making such threats.

The husband says the court erred in directing or requiring him to pay the necessary medical expenses, etc. of the two younger children. The husband says:

". . . . the Trial Court was in error in not restricting that portion of the final decree of divorce directing the appellant to pay the necessary medical, hospital and dental bill of the children to those physicians and dentists who had been regularly used by the parties heretofore. . . . ."

We do not agree. If the child taking cobalt treatments does not, in appellant's judgment, receive proper treatment, he can so advise the trial court and request appropriate action.

Appellant says the court erred in overruling his objection to evidence going to show an alleged altercation between appellant and the wife's father on an occasion when the wife was not present, because such evidence is not material to any issue in the case.

There is much testimony in this case tending to show threats and quarrels between appellant and the wife's father. While this evidence does not tend to show any act of cruelty threatened or committed by appellant against the wife, the evidence does show the character of appellant's relationship with his father-in-law and sheds light and color on the relationship which existed between appellant and the wife. We are not persuaded that the decree should be reversed for admission of this evidence.

We have limited our statement of the evidence to that favorable to the wife. There is evidence which directly contradicts the evidence for the wife. The trial court saw and heard the witnesses. We are not persuaded that the decree is plainly and palpably wrong.

Application is made to us for allowance to appellee for services of her counsel in representing her on this appeal. Brief filed by her counsel indicates that he has been diligent in protecting the interest of his client. The trial court awarded $200.00 for representing appellee in that court. Taking into account the financial circumstances of appellant as disclosed by the record, we are of opinion that $100.00 is a reasonable allowance for representing appellee on this appeal, and appellee's motion for allowance of attorney's fees is granted in that amount.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.