The case out of which this appeal arose originated when the appellees (Carla Ross Powell and her daughter Cameron Powell) and the appellants (Dr. and Mrs. C.J. Ross) filed a joint petition in the Circuit Court of Montgomery County, Juvenile Division. The parties' petition submitted all matters concerning the custody and welfare of Mrs. Powell's child, Cammie, to the jurisdiction of the Montgomery County Circuit Court.
After an oral hearing and the consideration of reports by various court appointed officials, the circuit court found that the welfare and best interests of seven year old Cammie Powell required that her grandparents (Dr. and Mrs. Ross) be enjoined from visiting her. The circuit court also permanently enjoined Dr. and Mrs. Ross from contacting their daughter (Carla Powell) or their granddaughter, or otherwise interfering with the lives of the latter two individuals. In addition, the court concluded that there was no evidence to support the Rosses' allegation that Carla Powell was an unfit mother. Consequently, the court denied Dr. and Mrs. Ross' request for continued supervision or evaluation of the child and her mother by the circuit court. Finally, the court directed Dr. and Mrs. Ross to return certain enumerated items of furniture to their daughter, Carla Powell.
From the circuit court's order, Dr. and Mrs. Ross filed this appeal contending that the court committed several errors, any one of which is sufficient to warrant reversal.
The Rosses' major contention is that the trial court erred in denying Dr. and Mrs. Ross reasonable visitation with their granddaughter and in enjoining the Rosses from contacting both their daughter and their granddaughter.
Viewing the evidence in the record with all of its attendant presumptions, the following facts are gleaned therefrom. The child, Cammie Powell, was born in 1970. Two years later her parents were divorced and her mother, Carla Powell, was awarded custody of young Cammie. Immediately after the divorce, Carla took Cammie and went to live with Carla's parents, Dr. and Mrs. Ross, in Selma, Alabama. Subsequently, *Page 806 
Carla Powell decided to obtain a graduate degree in nursing at the University of Alabama at Birmingham. Apparently, Dr. and Mrs. Ross did not object to Carla's decision. However, they did resist Carla's efforts to take Cammie with her to live in Birmingham, Alabama.
Nonetheless, Carla eventually obtained physical custody of Cammie by returning to Selma and removing the child from the latter's kindergarten class without the knowledge of Dr. and Mrs. Ross. After the occurrence of this event, Carla and her daughter resided at a lake home owned by the Rosses in Pell City, Alabama. Carla commuted from Pell City to her nursing classes in Birmingham.
During the period she resided in Birmingham, Carla suffered from depression, allergic reactions and various other infirmities. She was treated by a psychiatrist and he advised her to become less dependent upon her parents. When Carla attempted to follow the advice of her psychiatrist and curtail her visits with Dr. and Mrs. Ross, the parties' relationship began to deteriorate significantly. Indeed, the Rosses often requested that Carla and Cammie visit them at the formers' home in Selma. In most instances Carla refused or ignored her parents' invitations.
Subsequently, Carla moved to Montgomery, Alabama and her parents frequently attempted to visit Carla and their granddaughter there. Carla often requested that Dr. and Mrs. Ross limit their visits to occasions when Carla had expressly invited them. On other occasions, the Rosses would visit and then refuse to leave Carla's apartment when she asked them to. And in one instance Carla telephoned the police in an effort to have her parents physically removed from her residence.
Moreover, Dr. and Mrs. Ross initiated legal actions in the circuit courts of Choctaw and Montgomery County in an effort to obtain custody or visitation rights with regard to their granddaughter. These actions were filed and concluded prior to the case in dispute here.
The litigation in Choctaw County involved an attempt by the Rosses to have the circuit court grant them custody of Cammie. Although the record is somewhat vague with respect to the factual aspects of the legal action in Choctaw County, Dr. and Mrs. Ross apparently obtained a court order and with the aid of a deputy sheriff seized the child without notice or a hearing having been provided to the child's mother, Carla Powell. Carla, however, subsequently regained custody of her child.
In 1975 Dr. and Mrs. Ross also filed an action in Montgomery County Circuit Court seeking the right to visit with Cammie. This action was later dismissed, although it is unclear as to the reason for the dismissal.
In addition to the legal actions described above, Dr. and Mrs. Ross had the environment in which Cammie lived as well as their daughter's personal life investigated on several occasions by employees of the Department of Pensions and Security. These investigations occurred as a result of the Rosses' belief that Carla was having an affair with a married man and that the latter individual frequently beat Carla and her child. Despite the Rosses' beliefs, the investigators found no evidence to support the couple's allegations against their daughter or the man they claimed to be her lover.
Furthermore, several investigations of Carla Powell's personal life occurred as the result of the case at bar. Indeed, the court ordered the parties to avail themselves of a private counselor for the purpose of receiving counseling and suggestions on how to resolve their difficulties. After several personal interviews with both Carla and her parents, as well as some additional investigation into the matter, the private counselor recommended that the court should accede to Carla's desire not to see her parents or have them visit with Cammie. A probation officer and the attorney who was appointed to represent Cammie as guardian ad litem also made a surprise visit to Carla Powell's home and determined from this visit that Carla's home was clean, that Cammie was very close to her mother and that the child did not want to be separated *Page 807 
from her mother. The probation officer testified that she asked Cammie if her mother had any boyfriends; however, the officer continued by stating that the child did not reveal any information that was detrimental to her mother's character. And the attorney who acted as guardian ad litem stated that although Dr. and Mrs. Ross had told him that Carla was living with a man, his investigation of this allegation did not result in any evidence which would indicate that the Rosses' suspicions were well-founded.
In addition to the aforementioned facts, the circumstances of this case are further complicated by the emotional instability of both Dr. and Mrs. Ross. The record discloses that Mrs. Ross attempted suicide several years prior to the present case. Moreover, the testimony of the witnesses at trial indicated that she often acts irrationally and suffers from an overactive imagination. On the other hand, Dr. Ross is suffering from a condition known as Parkinson's Disease and as a result of this disease he becomes disoriented, agitated and confused. While being treated for Parkinson's Disease he suffered an "acute brain syndrome with psychotic reaction" which caused him to have various delusions. His condition is controlled to some extent by medication but he often becomes extremely angry and agitated with members of his family.
In cases involving a parent's or a grandparent's desire to obtain custody of a minor child, the welfare of the child is of preeminent concern. Carter v. Harbin, 279 Ala. 237,184 So.2d 145 (1966); Willette v. Bannister, Ala.Civ.App., 351 So.2d 605
(1977); Evans v. Wilkes, 48 Ala. App. 363, 265 So.2d 145 (1972). Accordingly, the party seeking to obtain custody or visitation must demonstrate to the trial court that his or her desire is in the best interests of the child. Carter v. Harbin, supra;Willette v. Bannister, supra. After a careful reading of the evidence it is clear that Dr. and Mrs. Ross failed to convince the trial court that their desire to visit their granddaughter was in the best interests of Cammie. Moreover, the trial court concluded that it was necessary to restrain the Rosses from further contact with their daughter and their granddaughter. And in view of the settled rule that the decision of the trial court is presumed correct where the court has seen the parties and the witnesses, heard their testimony and observed their demeanor, we cannot say that the trial court acted incorrectly in so ruling. Kewish v. Brothers, 279 Ala. 86, 181 So.2d 900
(1966); Kilgore v. Kilgore, 54 Ala. App. 336, 308 So.2d 249
(1975). Nor are we convinced that the court plainly abused the discretion given to it by law in matters regarding child custody and visitation. Kewish v. Brothers, supra; Sheffield v.Sheffield, Ala.Civ.App., 350 So.2d 1056 (1977); Evans v. Evans,278 Ala. 573, 179 So.2d 320 (1965). Therefore, the court's decision denying Dr. and Mrs. Ross reasonable visitation with their granddaughter and its order enjoining the Rosses from further contact with their daughter and granddaughter are affirmed.
The next issue raised by Dr. and Mrs. Ross on appeal is that the trial court did not comply with the mandates of Rule 65 (d), ARCP in granting Carla's request for an injunction against her parents.
Rule 65 (d)(2) of the Alabama Rules of Civil Procedure requires that an order granting an injunction provide the reasons for the injunction's issuance, set out its terms with specificity and describe in reasonable detail the act or acts sought to be restrained. We believe the form and scope of the injunction issued by the trial court in this instance was sufficient to meet the requirements of Rule 65 (d)(2).
The trial court's order provided:
 "1. The Court finds no authority to support the proposition of the maternal grandparents that they have a legal right, over the objection of their daughter, to visitation with the minor child, Cameron Carla Powell. Further, the Court finds from the evidence that lamentably it is in the best interests of the minor child that visitation with the grand parents not be allowed in the foreseeable future until or unless the natural mother, Carla Ross Powell, initiates said visitation. *Page 808 
 "2. Dr. and Mrs. Ross are hereby permanently enjoined from contacting, directly or indirectly, or through the agency of any other person, their daughter, Carla Ross Powell, and their granddaughter, Cameron Carla Powell. They are further enjoined from harassing, molesting, interfering or intervening directly or indirectly in the lives of Carla Ross Powell and Cameron Carla Powell." (Emphasis supplied.)
As this order demonstrates, the reason for the injunction's issuance was indicated, i.e. the welfare and best interests of the minor child. Likewise, its terms were sufficiently specific for the Rosses to be apprised of the fact that they were to have nothing whatsoever to do with the lives of their daughter or granddaughter unless their daughter chose to initiate a reconciliation between the parties. Finally, the court adequately described the act or acts to be restrained. Indeed, its order stated that Dr. and Mrs. Ross were not to visit, contact or otherwise interfere with Cammie or her mother.
It is our belief that a restraining order or injunction should be direct and succinct. It must set forth the reasons for its issuance and it should be specific in that respect. However, elaborate detail is not necessary. There is sufficient basis for sustaining the injunction if the party enjoined is apprised of the course of conduct which is prohibited and the order is not so excessively broad that the party against whom it is issued is subjected to undue restraint. See 7 Moore's Federal Practice § 65.11; 11 Wright Miller Federal Practiceand Procedure § 2955.
We have carefully considered the injunction issued in this case and find that it adequately apprised Dr. and Mrs. Ross of the course of conduct which was prohibited and that it did not constitute an undue restraint on their personal lives.
The third ground asserted by Dr. and Mrs. Ross as a basis for this appeal relates to their contention that the trial court erroneously considered and relied upon an investigative report made by a private counselor who discussed the parties' difficulties with both the Rosses and Carla. Dr. and Mrs. Ross complain that their attorney was not permitted to challenge this report because it was not presented as evidence at trial and that he was not given the opportunity to cross-examine the counselor because she was not called as a witness. We find absolutely no merit to these contentions.
In November of 1976 the trial court ordered the parties to discuss their problems with a private counselor named Frances Ward. Dr. and Mrs. Ross agreed to pay for the services of Mrs. Ward. On January 12, 1977 Mrs. Ward submitted her report to the trial judge. In her report she stated that she had interviewed the parties and on the basis of her investigation of the situation she saw no justification for requiring Carla to allow her parents to visit with Cammie. Mrs. Ward's letter to the court also stated that she did not feel that there was any justification for Dr. and Mrs. Ross' alarm for the welfare of their granddaughter.
In an order issued on January 31, 1977 the court adopted Mrs. Ward's report as part of the file in the dispute over Cammie Powell. In his order the trial court also appointed an attorney to act as guardian ad litem, a youth counselor (probation officer) to investigate the home of Carla Powell, and directed the attorneys who represented the parties to meet with him on April 15, 1977. Finally, the court ordered that pending its review of the case Dr. and Mrs. Ross were not to make any contact with Carla or her daughter.
At no time after the report was made a part of the file in the case did the Rosses' attorney object to its inclusion or challenge the validity of its conclusions. In fact, when the trial was held on the matter of the grandparents' right to visitation, there was no objection by the Rosses' attorney to the report made by Mrs. Ward even though the trial court expressly referred to the existence of that report. Nor did the lawyer who represented the Rosses seek to have Mrs. Ward made available for the *Page 809 
purpose of acquiring her testimony, although he expressly requested that the probation officer who had investigated Carla and filed a report about the investigation be made available as a witness. In view of these facts, it is our opinion that there is nothing in the record to indicate that counsel for Dr. and Mrs. Ross objected to the report made by Mrs. Ward or sought to have her made available for examination concerning her report.
In Anonymous v. Anonymous, Ala., 353 So.2d 515 (1977), our supreme court established that a party involved in custody litigation could not be denied a substantive right without first receiving notice that the right was in jeopardy. And inParten v. Parten, Ala.Civ.App., 351 So.2d 613 (1977), we stated that in custody matters reports of social workers which relate to their investigation of the parties should be made available for examination by the parties and their attorneys. Furthermore, we said that counsel could not be denied the right to examine a social worker about her report.
In the instant case Mrs. Ward's report was available for examination by the parties and their attorneys. Despite this fact, the contents of her report were never challenged. Nor was the Rosses' attorney denied the right to examine Mrs. Ward about her report. Indeed, he never requested that the court make her available for questioning even though he was aware (or should have been aware) that she had made a report which was unfavorable to his clients' interests. Accordingly, we are persuaded that the holdings in Anonymous v. Anonymous, supra
and Parten v. Parten, supra were not violated by the trial court's actions in this case.
Moreover, we are not convinced that the rights of Dr. and Mrs. Ross were prejudiced by the existence of the report by Mrs. Ward. Since the report was never introduced into evidence at trial, we cannot say that the trial court relied on the conclusions contained in that report in denying the Rosses visitation with their granddaughter. And this view is further supported by the fact that a substantial amount of evidence — other than the Ward report — was introduced which would support the court's order denying the Rosses contact or visitation with their granddaughter. See Stewart v. Stewart, Ala.Civ.App., 354 So.2d 816 (1978).
In situations where the complaining party contends that the trial court relied on improper or inadmissible evidence in reaching its decision, it is incumbent on the complaining party to affirmatively show that the court did in fact rely on or consider the defective evidence. See Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962). Dr. and Mrs. Ross made no such showing in the instant case.
The final issue presented to this court for review concerns the Rosses' assertion that the trial court erred in ordering Dr. and Mrs. Ross to deliver to Carla furniture and other personal property which was in the possession of the Rosses at the time of the trial. Dr. and Mrs. Ross contend that the right and possession of this property was disputed and that a court of equity had no jurisdiction to determine the contest over this property since the contest was legal in its nature and remedy.
During the pre-trial conference both parties to the litigation stipulated that one of the issues to be decided at trial was whether Dr. and Mrs. Ross had a duty to return the furniture and other personal property in their possession to their daughter Carla. Evidence on this issue was submitted at trial for the court's consideration. The trial court ordered that the Rosses return the furniture and other items to Carla, and such action by the court was not improper. In instances where a court of equity has assumed jurisdiction of a dispute at the invocation of the parties, the court may retain jurisdiction to enforce legal rights and apply legal remedies.Billingsley v. Billingsley, 285 Ala. 239, 231 So.2d 111 (1970);Hall v. Hall, 280 Ala. 275, 192 So.2d 727 (1966); Moody v.Moody, Ala.Civ.App., 339 So.2d 1030 (1976).
In accordance with the conclusions expressed in this opinion, all aspects of the trial court's judgment are affirmed. *Page 810 
MOTION TO DISMISS APPEAL AND TAX COSTS DENIED.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.