Dear Senator Hines:
You have requested an opinion of the Attorney General regarding the classification, distribution and use of gaming revenues generated by the Coushatta Indian Tribe of Louisiana and donated to the State of Louisiana pursuant to the provisions of the "Tribal-State Compact for the Conduct of Class III Gaming Between the Coushatta Indian Tribe of Louisiana and the State of Louisiana" ("Compact"). You specifically ask whether funds derived from the Compact and subsequently distributed to the Allen Parish School Board ("School Board") become public funds upon receipt by the School Board. You also ask whether said funds can be distributed to employees of the School Board as a one-time salary supplement.
In answer to your questions, we initially draw your attention to R.S. 33:3006 which provides, in pertinent part, the following:
 "§ 3006. Allen Parish Local Government Gaming Mitigation Fund; allocation and use of monies in the fund
 A. Beginning April 1, 1996, and each quarter thereafter, as received, the state treasurer shall credit to the Bond Security and Redemption Fund all financial contributions received by the state of Louisiana under the provisions of the compact between the state and the Coushatta Indian Tribe of Louisiana entitled, `Tribal-State Compact for the Conduct of Class III Gaming Between the Coushatta Indian Tribe of Louisiana and the State of Louisiana', as amended and hereinafter known as the `compact'; and after a sufficient amount is allocated from that fund to pay all the obligations secured by the full faith and credit of the state which become due and payable within any fiscal year, the treasurer shall pay the remainder of such funds into a special fund which is hereby created in the state treasury and designated as the `Allen Parish Local Government Gaming Mitigation Fund', hereinafter referred to as the `fund'.
 B. The monies in the fund shall be used solely to offset and defray the expenses of certain political subdivisions within Allen Parish as provided in Subsection C of this Section which result from the conduct of Class III gaming. All unexpended and unencumbered monies in the fund at the end of each fiscal year shall remain in the fund; the treasurer shall invest all monies in the fund in the same manner as the monies in the state general fund and all interest earned shall remain to the credit of the fund.
 C. Within ten days of the deposit of the monies into the fund each quarter and pursuant to appropriation by the legislature, the state treasurer shall, in accordance with the provisions of Subsection B of this Section, remit all such monies to the governing authority of Allen Parish.
 D. The governing authority of Allen Parish shall within ten days of the receipt of such monies, distribute all such funds to the governing authorities of the political subdivisions of Allen Parish as determined by the Gaming Revenue Distribution Committee created by the governing authority of Allen Parish.
 E. The Gaming Revenue Distribution Committee will meet annually prior to April first of each year to determine the proportion of funds to be distributed to each political subdivision of the parish. The mayors of the municipalities in Allen Parish shall jointly develop a formula for the distribution of revenues to each municipality in the parish.
We have been advised by representatives of the School Board that the Gaming Revenue Distribution Committee ("Distribution Committee") allocated twenty percent of the gaming receipts to the School Board. Your questions concern the classification and distribution of these funds.
In answer to your first question, as previously noted in Section 3006, quoted hereinabove, the funds received under the Compact by the State Treasurer must be credited to the Bond Security and Redemption Fund and, thereafter, to a special fund in the State Treasury. Paragraph C of Section 3006 authorizes an appropriation of the funds to Allen Parish ("Parish"). The Parish, in turn, allocates the funds to the School Board.
This office has previously opined that the term "state monies" (i.e., "public funds") includes funds collected or earned through taxes, licenses, fees and other revenues, and financial transactions of the state and its agencies, boards, or commissions. Further, funds that are directly or indirectly generated by "state monies" also constitute public funds. Public funds allocated by the State to its political subdivisions, through legislative appropriation, are, likewise, public. Attorney General Opinion Nos. 93-443 and 74-1807.
Accordingly, it is the opinion of this office that the funds, in question, constitute public funds once they are deposited in the State Treasury. See also Article VII, Section 9 of the Constitution. These monies continue to constitute public funds at the time of transfer to the Police Jury, as well as the School Board.
We turn now to your second question which must be considered in light of the factual scenario provided by representatives of the School Board as follows:
In October, 1995, the School Board's Finance Committee met in open meeting at which time representatives of the Allen Association of Educators (the "Association") advocated an increase in pay for classroom teachers and support personnel. The Association took the position that failure to support the increase would result in its opposition to the School Board's proposition for additional tax revenues for the school system.
The Association subsequently addressed the School Board at its November 13, 1995 meeting. Minutes of that meeting reflect a discussion relative to a pay increase for classroom teachers and support personnel. The School Board was presented with salary comparisons for teachers and support personnel employed in adjoining parishes. A proposal was then made by the School Board to dedicate funds received from the Compact, once they became available, for an increase in pay for classroom teachers and support personnel. At its December 11th meeting, the School Board amended its agenda to include the dedication of gaming revenues for said salary increases and the benefits related thereto. The minutes reflect that the timing, manner and amount of the payments would be determined as soon as the School Board received the funds.
At its meeting on February 12th, 1996, the School Board again ratified the action taken at its previous meetings, and clarified its intent that the salary supplements be for classroom teachers and support personnel, only. This brings us to the issue at hand, to wit:
 "Can the revenues from the Compact received by the School Board be distributed to designated recipients as a one-time salary supplement?
We find this issue to be controlled by the provisions of Article VII, Section 14(A) of the 1974 Louisiana Constitution. It provides:
 "Section 14(A). Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private."
This office has consistently opined that the payment of a bonus, or any other gratuitous unearned payment to public employees is prohibited, as same would be tantamount to a donation. In accord, are Attorney General Opinion Nos. 95-323, 92-295, 92-282, 89-190, 88-344 and 80-8056. Essentially, all of these authorities cite the well-established rule that payments of additional compensation to public employees, to be constitutionally valid, must be in the form of salary increases for future services to be rendered, not extra compensation for past services already rendered and recompensed. Various methods attempting to disguise constitutionally prohibited extra compensation for past services rendered were found to be equally invalid in the authorities cited above.
Conversely, this office does not consider Article VII, Section 14 to prohibit earned increases in compensation, or earned supplemental compensation, unless such supplemental compensation is specifically prohibited by law. Attorney General Opinion Nos. 95-165-A and 93-586. In our opinion, whether a payment of money is a donation or earned compensation is a factual determination. We find support for this position in State v. Davis,359 So.2d 803 (La.App. 3rd Cir. 1989), Writ Denied. Therein, the Court held:
 "We are presented with a factual determination: Were the two payments . . . which defendant paid to himself extra compensation for past services rendered . . . or . . . salaries for services rendered for which no salary was drawn when the services were rendered?" (Emphasis added.)
Given the facts presented to us as outlined hereinabove, it is the opinion of this office that they closely parallel those presented in Attorney General Opinion Nos. 95-165-A and 93-586. Both opine that it is legally permissible to grant a one-time salary supplement to designated School Board employees from funds previously so dedicated, but not received until a future date. In other words, the law recognizes the prospectivity of compensating for services rendered subsequent to the dedication, albeit the actual payments are made at a later time when funds become available.
In addition, we see a parallel between the School Board's plan and the well-recognized line of opinions that sanction lump sum payments made to teachers from sales tax revenues that are dedicated to teacher compensation. These opinions conclude that said surplus revenues may be expended by deferred payment at the midpoint and the end of each school year as a pro rata
payment paid to each employee under contract in accordance with the resolution imposing the tax. Attorney General Opinion Nos. 83-489 and 80-410.
Accordingly, it is the opinion of this office that gaming revenues received by the State and appropriated to the Parish for distribution to the various political subdivisions therein, constitute public funds. Monies so distributed to the School Board are, likewise, public.
Further, under the unique factual scenario presented hereinabove, the School Board may dedicate these funds to the payment of salaries for classroom teachers and support personnel. The payment of these salary increases in a lump sum, once the funds are received by the School Board, does not violate the rule against paying additional compensation for past services already rendered and recompensed. Rather, it represents salary increases authorized prior to the rendition of future services payable from funds to be received and dedicated for that purpose. Obviously, this action is contingent upon the School Board's amending its budget, accordingly, to implement the increase.
Trusting this adequately responds to your inquiry, I am.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ______________________________ ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob, III/cla
Date Received:
Date Released:
Robert E. Harroun, III Assistant Attorney General