In September 1997, the Madison County Department of Human Resources ("DHR") filed petitions to terminate the parental rights of M.W. (the "mother") and K.G. (the "father") to their two sons, who are twins (the "twins"). Following the presentation of ore tenus evidence, the trial court terminated the parental rights of both parents. The mother appeals.
The mother first argues that the trial court improperly admitted her mental-health records. During the first day of trial, DHR attempted to introduce the mother's mental-health records into evidence. Her attorney objected, on the grounds that the records had not been properly authenticated. The trial court admitted the records on the condition that DHR introduce a witness who could properly authenticate them. DHR never introduced such a witness. Because the condition was not met, and there is no evidence that the trial court considered the records, we must assume the trial court did not consider the records. Ross v. Powell, 359 So.2d 803 (Ala.Civ.App. 1978).
The mother next argues that the evidence properly before the trial court did not support the order terminating her parental rights. The termination of parental rights is a drastic measure, and the courts gravely consider such action. Ex parte *Page 248 
Beasley, 564 So.2d 950, 952 (Ala. 1990). A natural parent's prima facie right to the custody of his or her child is outweighed only by clear and convincing evidence indicating that termination of parental rights is in the best interests of the child. L.N. v. State Dep't of Human Resources, 619 So.2d 928, 929 (Ala.Civ.App. 1993). The juvenile court considers the parent's physical, financial, and mental abilities to care for the child, to determine the child's best interests. J.L.B. v. State Dep't of Human Resources, 608 So.2d 1367,1368 (Ala.Civ.App. 1992).
The grounds upon which a court may terminate parental rights are set out in Ala. Code 1975, § 26-18-7(a):
 "[T]he parents of [the] child are unable or unwilling to discharge their responsibilities to and for the child, or . . . the conduct or condition of the parents is such as to render them unable to properly care for the child and . . . such conduct or condition is unlikely to change in the foreseeable future . . . ."
The juvenile court is required to apply a two-pronged test in determining whether to terminate parental rights: (1) clear and convincing evidence must support a finding that the child is dependent; and (2) whether there are any viable alternatives to a termination of parental rights. Beasley, at 954.
The mother has six older children, and her parental rights have been terminated as to all of them. DHR began working with her during her pregnancy with the twins. During the pregnancy, and after the birth of the twins in August 1995, the mother received much assistance from DHR, including help in locating housing, financial aid for rent, items to use in caring for the children, and transportation. The twins were transferred to DHR in April 1996 because of one's "failure to thrive" and the mother's inability to maintain housing and an income.
The mother and one of the twins are HIV-positive. A caseworker and a baby-sitter provided by DHR accompanied the mother and the twins for a doctor's appointment for the one with HIV. While in the waiting room and while seeing the doctor, the mother slapped the other child 10 to 15 times. The caseworker testified that the mother was "out of control" while she slapped the child repeatedly and that the mother, yelling at the caseworker, said that she did not care who the caseworker worked for and that she intended to punish her children in this manner. At the time of this incident, the twins were one year old.
The DHR baby-sitter also testified regarding a previous occasion when she had arrived at the mother's home to watch the twins while the mother was at work. On that occasion, no one came to the door, so the baby-sitter assumed the mother was still asleep. After the baby-sitter had waited for almost 30 minutes, the mother arrived. She had left the twins alone for several hours.
After these two incidents, the twins were placed back in the custody of DHR. The mother missed several of her scheduled visitations with the twins, either without giving any reason or because of her repeated incarcerations. The mother would not regularly cooperate with DHR psychological evaluations or drug testing. One drug test was positive for cocaine use. The caseworker further testified that the mother has made no efforts to comply with the "Individualized Service Plan" ("ISP") formulated for her by DHR. The mother still does not have permanent housing or employment. The mother also has not cooperated with her HIV-positive child's health-care providers, often ignoring medical advice and often not obtaining recommended medication for the child.
We conclude that DHR presented clear and convincing evidence indicating that the twins were dependent and that there were available no alternatives less drastic than termination of the mother's parental rights. As stated above, the mother has made no progress toward being able to *Page 249 
rear her children adequately and has actually had setbacks, such as continuing to use illegal drugs and continuing to engage in other criminal activity. The mother offered to place the twins with her sister as an alternative to termination of parental rights; however, the sister declined to take custody of them. Therefore, the trial court's judgment terminating the mother's parental rights is affirmed.
AFFIRMED.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur.